**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

APR 15 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| ALMA ERIKA RAMON-PERALTA & XIOMARA CLAVEL-RAMON, <br><br> Petitioners, <br><br> v. <br><br> MERRICK B. GARLAND, Attorney General, <br><br> Respondent. | No.  19-72616 <br><br> Agency Nos.  A202-097-250 <br> A202-097-251 <br><br> MEMORANDUM* |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted April 13, 2021*
San Francisco, California

Before: THOMAS, Chief Judge, and R. NELSON and HUNSAKER, Circuit
Judges.

Alma Erika Ramon-Peralta and Xiomara Clavel-Ramon ("Petitioners")

petition for review of the Board of Immigration Appeals' ("BIA") order vacating an

---

\*     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\*     The panel unanimously concludes this case is suitable for decision
without oral argument.  *See* Fed. R. App. P. 34(a)(2).

immigration judge's ("IJ") decision granting withholding of removal. We deny the petition.

1. The BIA did not err in concluding that the particular social group ("PSG") of "the family of a threatened individual in Mexico" lacked social distinction.[1] *See Matter of M-E-V-G-*, 26 I. & N. Dec. 227, 237 (BIA 2014) (requiring alleged PSG be "socially distinct within the society in question"); *see also Rios v. Lynch*, 807 F.3d 1123, 1124 (9th Cir. 2015).

"[T]he family remains the quintessential particular social group." *Rios*, 807 F.3d at 1128. However, "some attenuated family links will not *per se* suffice" for a PSG. *Jie Lin v. Ashcroft*, 377 F.3d 1014, 1028 (9th Cir. 2004). A petitioner must still show the alleged family relationship "presents the kind of 'kinship ties' that

---

[1] Petitioners contend the BIA erred in not characterizing their PSG as "[f]amily of Raymundo Cabrera-Solis." But Petitioners expressly identified "the family of a threatened individual in Mexico" as their PSG in their pre-hearing documents filed with the IJ, which is what the IJ relied on in conducting its analysis. Petitioners may have unartfully asserted the PSG they now focus on in their post-hearing briefing submitted to the IJ, but it is not clear they did so in manner sufficient to satisfy administrative exhaustion requirements. *See Matter of W-Y-C- & H-O-B-*, 27 I. & N. Dec. 189, 191–92 (BIA 2018). Nevertheless, this is a distinction without a difference. The BIA understood Petitioners' PSG as referencing their relationship to "specifically the father of [Alma's] oldest daughter," *i.e.* Raymundo Cabrera-Solis, and petitioners fail to explain how identifying their PSG as "family of Raymundo Cabrera-Solis instead of as "the family of a threatened individual in Mexico" would change the BIA's analysis regarding whether their PSG was socially distinct.

constitute a 'particular social group.'" *See Gonzalez v. Thomas*, 547 U.S. 183, 186 (2006); *see also Rios*, 807 F.3d at 1128.

Here, Petitioners' evidence of alleged family ties is insufficient. First, they contend that that the drug trafficker's seeking payment of Raymundo's debts from Ms. Ramon-Peralta shows that the persecutor perceives them as a family unit. However, a PSG's distinctiveness is based on how *society*, not a persecutor, perceives the group. *Conde Quevedo v. Barr*, 947 F.3d 1238, 1242 (9th Cir. 2020). Second, they contend that Mexican society knew Raymundo was the father of one of Ms. Ramon-Peralta's daughters because he was listed on her birth certificate. However, Marylin—the child shared by Ms. Ramon-Peralta and Raymundo—was born in the United States and not Mexico. There is no corroborative or objective evidence that people in Mexican society saw Marylin's birth certificate or knew of Ms. Ramon-Peralta's connection to Raymundo. Nor is there any evidence that society perceived Xiomara, a child of Ms. Ramon-Peralta but not Raymundo, as part of a distinct family unit with Raymundo. Petitioners failed to meet their burden of establishing a socially distinct PSG.

2.      Petitioners also argue the BIA violated their due process rights by not allowing them to file a supplemental brief when it permitted Respondent to file its appeal brief late. They contend that these decisions unfairly reduced their time to reply to Respondent's brief. We only reverse the BIA "on due process grounds if

3

(1) the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his case, and (2) the alien demonstrates prejudice, which means that the outcome of the proceeding may have been affected by the alleged violation." *Ibarra-Flores v. Gonzales*, 439 F.3d 614, 620–21 (9th Cir. 2006) (internal quotation marks and citations omitted). We review alleged due process violations in deportation proceedings de novo. *Id.* at 620.

The BIA did not err in exercising its discretion to accept Respondent's late-filed brief accompanied by a motion. *See* 8 C.F.R. § 1003.3(c)(1). The BIA has "the discretion to consider a late-filed brief" that "set[s] forth in detail the reasons for the untimeliness." BIA Practice Manual, ch. 4.7(d). The BIA was satisfied with knowing the original trial attorney who was assigned the case left the Department of Homeland Security and as a result the deadline was missed.

Nor did the BIA err in denying Petitioners' motion for supplemental briefing. Petitioners' motion should have been submitted alongside a proposed supplemental brief. BIA Practice Manual, ch. 4.6(g)(ii). However, no supplemental brief was presented to the BIA.

Petitioners cannot show "prejudice" or that "the proceeding was so fundamentally unfair" so as to prevent Petitioners from "reasonably presenting" their case when the BIA properly exercised its discretion to allow Respondent's late-filed

4

brief and the Petitioner's motion for supplemental briefing was deficient. *Ibarra-Flores*, 439 F.3d at 620–21 (internal quotation marks and citation omitted).

**DENIED.**